IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 5, 2005

## RICKY THOMAS HUGHES, II v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-C-2298     Cheryl Blackburn, Judge**

_____

**No. M2004-01273-CCA-R3-PC - Filed June 9, 2005**

_____

The petitioner, Ricky Thomas Hughes, II, appeals from the post-conviction court's denial of post-conviction relief. On appeal, he contends that he received the ineffective assistance of counsel when his trial counsel failed to properly investigate and prepare his case for trial and failed to advise him of the consequences of proceeding to trial. The petitioner also contends that his sentences are invalid under Blakely v. Washington, 542 U.S. ----, 124 S.Ct. 2531 (2004). Following our review, we affirm the judgment of the post-conviction court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ, joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Ricky Thomas Hughes, II.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III., District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

The following is a brief summary of the convicting evidence at trial as set forth in this Court's opinion on direct appeal: The victim was hit over the head with a baseball bat and his neck was cut with a box cutter. The petitioner made several statements to police. At first, he denied involvement, then twenty minutes later he admitted being present when the victim was killed but denied killing the victim. According to the petitioner, three other males killed the victim and forced him to help them dispose of the body and clean up his townhouse. The three males threatened to kill him if he did not help them. The petitioner gave the police directions to the victim's body. Later, the petitioner admitted killing the victim. According to the petitioner, he and a co-defendant

planned to rob the victim. He hit the victim with a baseball bat and cut the victim's throat. Co-defendant held the victim and helped dispose of the body. He and co-defendant divided the money taken from the victim. This statement was recorded by law enforcement. See State v. Ricky T. Hughes, No. M2000-01846-CCAM-R3-CD, 2002 WL 1033340, at *1-4 (Tenn. Crim. App., at Nashville, May 21, 2002), perm. app. denied (Tenn. Nov. 12, 2002).

According to another witness, the petitioner stated that "[he] killed somebody but [he] didn't mean to do it." Witness testimony and forensic evidence established the existence of blood stains on the walls, doors, blinds, and couch inside the petitioner's townhouse. The State presented evidence connecting the petitioner with the baseball bat used to strike the victim and the orange trash bags used to cover the victim's body. The petitioner's testimony at trial suggested that two co-defendants killed the victim, but he helped remove the victim's body and helped clean the townhouse. Id.

The jury found the petitioner guilty of facilitation of first degree murder and especially aggravated robbery. The trial court sentenced him to consecutive sentences of twenty-five years as a standard offender for the facilitation conviction and twenty-five years as a violent offender for the aggravated robbery conviction. On direct appeal, this Court affirmed the conviction and sentence. Id. Thereafter, the petitioner filed a *pro se* petition for post-conviction relief. Post-conviction counsel was appointed, an amended petition was filed, and a hearing was held.

At the hearing, the petitioner testified that he believed that his trial counsel did not adequately communicate with him prior to trial and failed to prepare his case for trial. The petitioner stated that trial counsel met with him a total of three times before trial, the meetings were brief, and the discussions during those meetings dealt primarily with how trial counsel was going to get paid. According to the petitioner, trial counsel did not review discovery with him, did not discuss the strengths and weaknesses of his case, did not discuss the possibility of plea bargaining with the State, and did not discuss the nature of the charges against him or the consequences of going to trial. The petitioner stated that trial counsel "just told [him] things were looking good."

The petitioner claimed that he gave the incriminating statements to police because he was threatened by co-defendant, Jon Goodale. The petitioner testified that trial counsel failed to call Coleen Butler as a witness. The petitioner believed Butler could have testified that she too had been threatened by Goodale. According to the petitioner, Butler's testimony would have corroborated the defendant's testimony regarding Goodale's threat. The petitioner also claimed to have given trial counsel the names of several character witnesses, but counsel only called the petitioner's mother to testify. The petitioner also indicated that trial counsel should have cross-examined a witness about her testimony. According to the petitioner, the witness's testimony as to her observation of blood on the carpet and couch was suspect because he had chocolate-brown carpet.

The petitioner testified that trial counsel failed to suppress petitioner's oral statement that he killed the victim. The petitioner explained that a police officer's testimony regarding this statement was introduced at trial. The petitioner stated he had been given Miranda warnings "earlier from

police," but not prior to making this statement. Because trial counsel failed to move to suppress the statement prior to trial, but made the motion to suppress at trial, the witness was allowed to testify about the petitioner's statement at trial and the issue was waived on appeal. The petitioner further testified that although trial counsel filed a pre-trial motion to suppress his recorded statement to police, counsel did not represent him at the pre-trial hearing. Instead, another attorney represented him at the pre-trial hearing. The petitioner stated that trial counsel never discussed the hearing with him, and had trial counsel done so, the petitioner would have testified that he gave the statement because he was threatened. He also stated that he was not able to argue that his statement was involuntary on appeal because it was not raised at the pretrial hearing.

The petitioner claimed that trial counsel fell asleep on two occasions during the trial, and one of the times, trial counsel failed to respond to the court because he was sleeping. The petitioner further claimed that trial counsel failed to prepare him to testify at trial. The petitioner stated that, had he been prepared, he would have testified more effectively that he did not commit the murder.

On cross-examination, the petitioner admitted that trial counsel was aware of what the petitioner's testimony would be at trial, but he insisted that trial counsel failed to discuss each aspect of his testimony. The petitioner also admitted that he was allowed to explain his version of the events at trial – particularly that Goodale forced him to confess to the murder and that witness testimony stating otherwise was not credible. The petitioner acknowledged that he was advised of his rights prior to making a statement. In addition, the petitioner acknowledged that the victim was killed at his house and that the blood was cleaned up.

The petitioner's father, Jerry McCord, testified that trial counsel failed to call him to testify. McCord stated that he would have testified that he heard Goodale threaten to beat up and rob the victim weeks before the homicide. However, McCord admitted that he never told the petitioner about Goodale's threat. McCord also claimed that trial counsel was difficult to track down. McCord stated that he accompanied the petitioner when meeting trial counsel. According to McCord, little discussion of the case took place during those meetings with trial counsel. However, McCord admitted that trial counsel discussed witnesses.

Dan McMurtry testified that he assisted trial counsel with jury selection. He stated that trial counsel discussed the case with him in preparation for trial, and that he was present during the entire trial. According to McMurty, the trial went as expected and the jury apparently accredited some of the petitioner's testimony because they acquitted him of first degree murder. McMurty stated that trial counsel did close his eyes during the lengthy jury instruction but did not fall asleep. McMurty acknowledged that he nudged trial counsel to get his attention during the reading of the jury instructions.

Trial counsel testified that he had practiced law for thirty years and that his practice primarily consisted of criminal defense work. He said that he filed for discovery, was aware of the evidence, and knew the nature of petitioner's testimony at trial. He testified that he advised the petitioner to

give a third statement to the State regarding his role in the murder and therefore knew the content of the petitioner's proposed testimony. He stated the following:

> [T]he purpose of [giving a third statement] was [the petitioner's] earlier statements were extremely damaging to him. Not only in his admitting that he committed that offense, used the baseball bat, slit the throat, but also the demeanor of [the petitioner] . . . [P]articularly, I was trying to, in essence, have a more favorable statement available so that if it was not admissible to the jury, at least [the State] would be precluded from saying . . . isn't today the first time [the petitioner] has ever told anyone about this version. That was the strategy in taking the unusual step of giving a third confession.

Trial counsel further stated that the petitioner's testimony at trial was consistent with the third statement.

Trial counsel testified that he spoke to the petitioner about his case numerous times. He stated that he wanted to make certain that he knew what the petitioner was going to say before he allowed the petitioner to make a statement in the presence of the State. Trial counsel also testified that substitute counsel represented the petitioner at the suppression hearing because he was sick. Furthermore, trial counsel asserted that the odds of winning at the suppression hearing were very slim because the petitioner was given his Miranda warning prior to making a statement, and the coercion the petitioner allegedly faced was from his co-defendant not law enforcement. Trial counsel denied telling the petitioner that things were looking good and stated that he thought the trial went as expected. Trial counsel elaborated, stating that the evidence was very strong against the petitioner and "anything other than murder in the first degree would have been a quasi victory."

Trial counsel did not recall going to sleep during the trial but admitted that the jury charge was lengthy and he might have closed his eyes. He stated he was present for the pretrial conference regarding the jury charge and submitted several instructions which the court granted. He further stated that he did not challenge the testimony of one of the witnesses regarding her veracity about the blood stains on the carpet because he did not want to antagonize the jury with an irrelevant issue.

After a thorough review of the petitioner's claims, the post-conviction court set out in great detail an order denying post-conviction relief. The court credited trial counsel's testimony and found no deficient performance or prejudice entitling the petitioner to relief. The petitioner appealed.

## II. Analysis

On appeal, the petitioner first contends that he received the ineffective assistance of counsel when his trial counsel failed to properly investigate and prepare his case for trial and failed to advise him of the consequences of proceeding to trial. In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this Court is required to affirm

the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. Id.

To establish ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Arnold v. State, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. Strickland, 466 U.S. at 688; see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. Id. at 697; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Also, a fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. Goad, 938 S.W.2d at 369. However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation. Id. (citations omitted).

Upon review, we conclude that the record supports the post-conviction court's findings. The petitioner's claim that his trial counsel was ineffective is contradicted by trial counsel's testimony at the post-conviction hearing. Trial counsel's testimony, which was accredited by the post-conviction court, indicated that he was aware of the evidence, had filed for discovery, had discussed the case with the petitioner, had contacted the State regarding their witnesses, and had prepared the petitioner to testify at trial. Trial counsel's testimony also indicated that his decision not to challenge the testimony of a witness was a reasonable trial strategy. As trial counsel explained, the primary issue was the role the petitioner played in the victim's death, not whether or not a witness saw blood on the carpets. In addition, the record does not support the petitioner's claim that trial counsel was ineffective by failing to advise the petitioner of the consequences of going to trial. According to the record, the State offered no plea bargain in this case.

Even assuming trial counsel did commit some error in investigating or preparing the petitioner's case, the petitioner failed to demonstrate prejudice. At the post-conviction hearing, the petitioner could not explain how any of his allegations of ineffective assistance of counsel would have changed the outcome of the trial. The record reflects that the petitioner's incriminating statements introduced at trial were made after receiving Miranda warnings and were not a product of police coercion. Therefore, the petitioner's statements were admissible regardless of the fact that

-5-

trial counsel waited until trial to move to suppress one of the statements. Also, the petitioner failed to show how potential witness testimony would have altered the jury's verdict. Although the petitioner claimed Butler's testimony would have corroborated his own testimony, the petitioner did not present Butler as a witnesses at the post-conviction hearing. As a general rule, the presentation of a witness at the post-conviction hearing is necessary to prove that counsel's failure to utilize this witness resulted in prejudice to the petitioner. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Furthermore, assuming that Butler and McCord's testimony corroborated, in some respect, the petitioner's testimony that Goodale threatened him and others, the evidence at trial clearly supported the petitioner's convictions. Accordingly, it is clear from the record that the petitioner failed prove his claims of ineffective assistance of counsel by clear and convincing evidence.

The petitioner also claims that his sentences are invalid under Blakely v. Washington. He contends the trial court violated Blakely by sentencing him in accordance with Tennessee sentencing statutes, which permit the trial judge to enhance a sentence based on facts not reflected in the jury verdict or admitted by the petitioner. The petitioner raises this claim for the first time on appeal after being denied post-conviction relief. The petitioner's claim is not timely raised or properly preserved. See generally, Tenn. Code Ann. § 40-30-106(g); Tenn. R. App. P. 36; Tenn. R. App. P. 24(b); Tenn. Ct. Crim. App. Rule 10(b). Also, our supreme court has held that Blakely does not announce a new rule of law or impact the validity of our statutory sentencing scheme. State v. Edwin Gomez and Jonathan S. Londono, No. M2002-01209-SC-R11-CD, --- S.W.3d ----, 2005 WL 856848 *11, 22 (Tenn. April, 14, 2005), petition to rehear filed (Tenn. 2005). In addition, our supreme court has indicated that Blakely issues are not subject to retroactive application in post-conviction cases. Id. at *13, n.16. Therefore, this issue is without merit.

### III. Conclusion

Following our review, we conclude that the record supports the post-conviction court's findings and affirm the judgment of the post-conviction court denying post-conviction relief.

_____
J.C. McLIN, JUDGE